**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MICHAEL PHILIP KAUFMAN

                    Plaintiff,

     v.

SALESFORCE.COM, INC.,

                   Defendant.

Civ. No. 1-20-cv-06879 (JPC)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
SALESFORCE.COM, INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN
DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................. 2

   A.   Legal Standard for Transfer ................................................................................ 2

   B.   Analysis of Transfer Factors ............................................................................... 5

      1.   Convenience of witnesses ............................................................................. 5

      2.   Convenience of the parties .......................................................................... 10

      3.   Location of relevant documents and access to sources of proof .............. 11

      4.   The locus of the operative facts ................................................................. 13

      5.   The availability of process to compel the attendance of unwilling witnesses .......... 15

      6.   The relative means of the parties ............................................................... 15

      7.   The weight to be accorded to plaintiff's choice of forum ........................ 16

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Amersham Pharmacia Biotech, Inc*. *v*. *Perkin-Elmer Corp*., 11 F. Supp. 2d 729
  (S.D.N.Y. 1998) ...................................................................................2, 11, 16

*Age Grp*. *Ltd*. *v*. *Regal Logistics*, *Corp*., No. 06 CIV. 4328 (PKL), 2007 WL 2274024
  (S.D.N.Y. Aug. 8, 2007)........................................................................................6

*In re Apple Inc*., No. 2020-135, 2020 WL 6554063 (Fed. Cir., Nov. 9, 2020) ........................6

*Atl*. *Recording v*. *Project Playlist*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009) ..............................16

*Bryant v*. *Potbelly Sandwich Works, LLC*, No. 17-CV-7638 (CM), 2018 WL 898230
  (S.D.N.Y. Feb. 5, 2018) .......................................................................................11

*Carson Optical v*. *Hawk Imps*., *No*. 12-CV-1169(JS)(GRB),
  2013 U.S. Dist. LEXIS 207166 (E.D.N.Y. Feb. 12, 2013) ...................................................5

*Columbia Pictures Indus*. *v*. *Fung*, 447 F. Supp. 2d 306 (S.D.N.Y. 2006) ............................16

*CVS Pharmacy, Inc*., *v*. *AstraZeneca Pharm*. *L.P.*, No. 19-CV-10049 (CM),
  2020 WL 4671659 (S.D.N.Y. Aug. 12, 2020) ...................................................................3, 4

*D.H*. *Blair & Co*., *Inc*. *v*. *Gottdiener*, 462 F.3d 95 (2d Cir. 2006)........................................2, 3

*EasyWeb Innovations, LLC v*. *Facebook*, *Inc*., 888 F. Supp. 2d 342 (E.D.N.Y. 2012)............5

*Emblaze Ltd*. *v*. *Apple*, *Inc*., No. 10 CIV. 5713 PKC, 2011 WL 724275
  (S.D.N.Y. Feb. 25, 2011) ...................................................................................16, 17

*Freeplay Music, LLC v*. *Gibson Brands*, *Inc*., 195 F. Supp. 3d 613 (S.D.N.Y. 2016) .............4

*Guardian v*. *Life Ins*. *Co*. *of Am*. *v*. *Hernandez*, No. 11-CV-2114 (SAS), 2011 WL 3678134
  (S.D.N.Y. Aug. 22, 2011)....................................................................................11

*Int'l Sec*. *Exch*., *LLC v*. *Chicago Bd*. *Options Exch*. *Inc*.,
  No. 06CIV.13445(RMB)(THK), 2007 WL 1541087 (S.D.N.Y. May 24, 2007)...............17

*Lencco Racing Co*. *v*. *Arctco*, *Inc*., 953 F. Supp. 69 (W.D.N.Y. 1997) ...................................17

*Levinson v*. *Regal Ware*, *Inc*., 14 U.S.P.Q.2d 1064, 1989 WL 205724 (D.N.J.1989).......17, 18

*MasterObjects, Inc*. *v*. *Amazon.com*, *Inc*., No. 20 CV 3478 (PKC), 2020 WL 6075528
  (S.D.N.Y. Oct. 15, 2020)........................................................................................3

*Medien Patent Verwaltung AG v*. *Warner Bros*. *Entm't*, 749 F. Supp. 2d 188
  (S.D.N.Y. 2010) ...................................................................................................7

*Megna v*. *Biocomp Labs*. *Inc*., 220 F. Supp. 3d 496 (S.D.N.Y. 2016)......................................2

*Millennium, L.P*. *v*. *Hyland Software*, *Inc*., No. 03 CIV. 3900 (DC), 2003 WL 22928644
  (S.D.N.Y. Dec. 10, 2003) .......................................................................................6

*Mirror Worlds Techs., LLC v. Facebook, Inc.*, No. 17-CV-3473 (JGK), 2017 WL 5634127 (S.D.N.Y. Nov. 20, 2017)........................................................................................................4

*Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006) ............................................8

*New Leaf Data Servs., LLC v. PanXchange, Inc.*, No. 3:20-CV-00204 (KAD), 2020 WL 5548857 (D. Conn. Sept. 16, 2020) ......................................................................3

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) .........
...................................................................................................................................3, 4, 16

*Prokos v. Haute Living, Inc.*, No. 19 CIV. 138 (PGG), 2020 WL 4677375 (S.D.N.Y. Aug. 11, 2020)..................................................................................................3

*Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, No. 04CV9266KMK, 2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) ....................................................................6, 7

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) ........................1

*Telebrands Corp. v. Wilton Indus., Inc.*, 983 F. Supp. 471 (S.D.N.Y. 1997) ........................16

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325 (Fed. Cir. 2010) .......................9

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03 CIV. 3227 (CBM), 2003 WL 22743829 (S.D.N.Y. Nov. 20, 2003) ....................................................................18

*View 360 Sols. LLC v. Google, Inc.*, No. 1:12-CV-1352 GTS/TWD, 2013 WL 998379 (N.D.N.Y. Mar. 13, 2013) .........................................................................................4

*Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206 (S.D.N.Y. 2017).................11

## Statutes

28 U.S.C. § 1400 ........................................................................................................................1

28 U.S.C. § 1404 ................................................................................................................*passim*

35 U.S.C. § 102 ......................................................................................................................9, 15

35 U.S.C. § 103 .......................................................................................................................15

Plaintiff Michael Philip Kaufman ("Plaintiff" or "Kaufman") submits this memorandum opposing the motion to transfer venue filed by defendant salesforce.com. Inc. ("Defendant" or "Salesforce"). (D.I. 27-30.) This memorandum is further supported by the Declaration by Mr. Kaufman ("Kaufman Decl."), submitted herewith.

## I.    INTRODUCTION

Salesforce does not challenge that venue is proper in this District under 28 U.S.C. § 1400(b). The Supreme Court has held that 28 U.S.C. § 1400(b) exclusively governs venue in a patent infringement action against a domestic U.S. corporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519-20 (2017). 35 U.S.C. § 1400(b) already takes into account factors that make it reasonably convenient for a defendant to appear in a district properly selected under 28 U.S.C. § 1400(b), including that, under the provision, the defendant must either be incorporated or have "a regular and established place of business" in the district. Salesforce has such a presence in the Southern District – several of them, in fact, including a large building with its name on top overlooking Bryant Park. The Plaintiff, for his part, also resides in this District, now and since the time of his invention in 2000.[1]

The present motion is not for dismissal for improper venue, but rather for discretionary transfer as a matter of convenience, to the Northern District of California, under 28 U.S.C. § 1404. The question of transfer under § 1404 concerns whether multiple specified factors strongly outweigh – *very* strongly under the law in the Second Circuit, the plaintiff's choice of

---

[1] Plaintiff does not dispute that, in addition to this District, venue would also be proper under 28 U.S.C. § 1400(b) in the Northern District of California, or the District of Delaware, where Salesforce is incorporated, and in several other districts in which Salesforce maintains a regular and established place of business. Plaintiff's choice, however, was this District, where the plaintiff himself is located, which is legally proper and, for the reasons addressed herein, should not be disturbed for discretionary reasons.

forum. Kaufman respectfully submits that the sound exercise of discretion points strongly to denying the motion.

## II.   ARGUMENT

### A.  Legal Standard for Transfer

Applicable caselaw recognizes a number of factors that bear on discretionary transfer under § 1404, including:

(1)  Convenience of witnesses

(2)  Location of relevant documents and the relative ease of access to sources of proof

(3)  Convenience of the parties

(4)  Locus of the operative facts

(5)  Availability of process to compel the attendance of unwilling witnesses

(6)  Relative means of the parties

(7)  The weight to be accorded to the plaintiff's choice of forum

*See, e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *Megna v. Biocomp Labs. Inc.*, 220 F. Supp. 3d 496, 498 (S.D.N.Y. 2016).[2]

But how are these factors to be weighed? One can read Salesforce's brief (D.I. 28) and have no idea what the answer is to this crucial question. Salesforce cites a 1998 District Court decision, *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729 (S.D.N.Y. 1998), in a case, unlike this one, where neither party was from this District, for Salesforce's listing of factors. But Salesforce omits where Judge Rakoff said in that decision: "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 730.

---

[2] *Megna* cites two other factors, (i) the comparative familiarity of each district with the governing law; and (ii) judicial economy and the interests of justice. *Megna*, 220 F. Supp. 3d at 498. However, neither side herein asserts that these factors are other than neutral on the facts of this case.

More significantly, Salesforce's brief overlooks applicable Second Circuit authority, more recent than the 1990s district court cases it relies on, that speaks directly to this issue. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). In *New York Marine*, the Second Circuit upheld – with approval – the district court's application of a "clear and convincing" standard in evaluating a transfer motion. The Second Circuit recited other appellate rulings approving standards including the following: "the plaintiff's choice of forum should not be disturbed unless the balance in the defendant's favor is shown *by clear and convincing evidence*." *Id.* at 114 (emphasis added) (internal quotations and ellipses omitted); *see also D.H. Blair*, 462 F.3d at 107 (plaintiff's choice of forum "is given great weight."); *Prokos v. Haute Living, Inc.*, No. 19 CIV. 138 (PGG), 2020 WL 4677375, at *3 (S.D.N.Y. Aug. 11, 2020) ("movant bears the burden of demonstrating – by clear and convincing evidence – that the balance of convenience and the interests of justice warrant transfer," citing *New York Marine*). While transfers under § 1404 remain discretionary, recent decisions in this District and Circuit continue to reflect the necessity for a strong showing, generally by "clear and convincing evidence," to warrant a discretionary transfer of venue. *See, e.g., MasterObjects, Inc. v. Amazon.com, Inc.*, No. 20 CV 3478 (PKC), 2020 WL 6075528, at *1 (S.D.N.Y. Oct. 15, 2020) ("The burden of demonstrating the desirability of transfer lies with the moving party, who must make a clear and convincing showing that the balance of convenience favors defendant's choice"); *New Leaf Data Servs., LLC v. PanXchange, Inc.*, No. 3:20-CV-00204 (KAD), 2020 WL 5548857, at *2 (D. Conn. Sept. 16, 2020) ("The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing"); *CVS Pharmacy, Inc. v. AstraZeneca Pharm. L.P.*, No. 19-CV-10049 (CM), 2020 WL 4671659, at *4 (S.D.N.Y. Aug. 12, 2020)

("Defendants ordinarily bear the burden of making a 'clear and convincing' showing that transfer is proper").

Salesforce's motion, in failing to cite *New York Marine* or otherwise address the controlling standards in this Circuit, would lead the Court to overlook the high bar for transfer prescribed by the Court of Appeals, where venue in the district is legally proper and the plaintiff, especially one who resides in the district, has chosen to lay venue there.

When viewed in light of the proper standard for weighing the pertinent factors, it is apparent that Salesforce falls short of making a sufficient argument for transfer.

Courts in this District and Circuit routinely deny motions to transfer under circumstances similar to the instant case. *See, e.g.*, *Mirror Worlds Techs., LLC v. Facebook, Inc.*, No. 17-CV-3473 (JGK), 2017 WL 5634127, at *3-6 (S.D.N.Y. Nov. 20, 2017) (denying motion to transfer where plaintiff had a presence in this District and was therefore not engaged in forum shopping, where the invention was made near the District and plaintiff need only establish "some material relation" to the District, where defendant, a large company, could transport the party witnesses to the District and it was plain that this District was more convenient for plaintiff's witnesses, and where documents could be electronically sent to this or any District.); *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 620 (S.D.N.Y. 2016) (denying motion to transfer and giving substantial weight to forum choice of home state plaintiff in case against a Tennessee, even though some key witnesses and operative facts were located in Tennessee, and noting that the harm of infringement was discovered in New York); *View 360 Sols. LLC v. Google, Inc.*, No. 1:12-CV-1352 GTS/TWD, 2013 WL 998379, at *7 (N.D.N.Y. Mar. 13, 2013), *aff'd*, No. 112CV1352GTSTWD, 2013 WL 12130430 (N.D.N.Y. Aug. 13, 2013) (denying motion to transfer to N.D. Cal. because plaintiff "is incorporated in this state, and maintains a preference

for litigating in this forum. … Moreover, the patents-in-suit were designed in the [District] by [an inventor] who currently resides in this forum and "[t]he place where the patented invention was developed and the place where the allegedly infringing products are developed are both loci of operative facts."); *Carson Optical v. Hawk Imps.*, No. 12-CV-1169(JS)(GRB), 2013 U.S. Dist. LEXIS 207166, at *8 (E.D.N.Y. Feb. 12, 2013) (denying motion to transfer to C.D. Cal. because the plaintiff's choice of forum "is entitled to considerable weight" which "is particularly so where, as here, Plaintiff is a resident of the forum district."); *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 355 (E.D.N.Y. 2012) (denying transfer to N.D. Cal. where individual-owned plaintiff would be financially burdened by litigating in California and defendant was a large corporation and "the operative facts do have a clear connection to the District as the place where the patents-in-suit were designed, developed, and patented" and plaintiff's choice of forum it is … entitled to great deference in this case as the plaintiff's home district and as one of the loci of the operative facts.").

### B.  Analysis of Transfer Factors

#### 1.  *Convenience of witnesses*

In the world of § 1404 motions there are real witnesses, and speculative, collateral, or imaginary witnesses. There are also witnesses who will only appear by deposition (which can occur anywhere, regardless of the trial court venue, without any net impact on anyone's convenience), as well as those witnesses who will actually be called at trial.[3]

One real witness, who will appear at trial, is the plaintiff, Michael Philip Kaufman, who has lived and worked in this District since well prior to his invention in 2000. Kaufman Decl. ¶¶ 3-4. Mr. Kaufman's co-inventor, Micah Philip Silverman, who testified, albeit briefly, in

---

[3] Plaintiff notes that its experts are all from the East Coast, but of course the focus here is more on fact witnesses.

Kaufman's previous trial in this District, which involved one of the two patents asserted here, lived and worked here when the invention was made, and recently moved to Virginia Beach, which, though not within 100 miles, is within reasonable driving distance of this District, unlike the Northern District of California.[4] Kaufman Decl. ¶¶ 6-7. As Salesforce points out, Mr. Silverman has an interest in the outcome and has appeared voluntarily. Mr. Silverman's interest, however, is not a reason to disregard his convenience.

Salesforce cites to a number of cases that are distinguishable.  In A*ge Grp. Ltd. v. Regal Logistics, Corp.*, the court put specific emphasis on the "special consideration of the convenience of non-party witnesses" and the defendant had identified eight non-party witnesses in the transferee forum, with no indications of cherry picking as Salesforce has done here. No. 06 CIV. 4328 (PKL), 2007 WL 2274024, at *4 (S.D.N.Y. Aug. 8, 2007).  Salesforce also cites to *Millennium, L.P. v. Hyland Software, Inc.*, in which the defendant had "no employees, offices, or sales representatives in New York," and its sales in the District "accounted for less than 1% of revenue." No. 03 CIV. 3900 (DC), 2003 WL 22928644, at *1 (S.D.N.Y. Dec. 10, 2003). This is in sharp contrast to Salesforce, which has a substantial presence in, and derives substantial revenue from, this District.  Salesforce further cites to *Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.* for the argument that Mr. Kaufman's New York residence has "diminished relevance." (D.I. 28 at 24 (*citing Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, No. 04CV9266KMK, 2005 WL 236440, at *4 (S.D.N.Y. Feb. 1, 2005). Salesforce neglects to

---

[4] *See In re Apple Inc.*, No. 2020-135, 2020 WL 6554063, at *5 (Fed. Cir., Nov. 9, 2020) (holding that the "100-mile rule [for determining convenience of third-party witnesses] should not be rigidly applied" (court's quotations and citation omitted)). While the writ of mandamus was granted for too rigidly applying this rule in order to rely on slight differences in travel of a great deal longer distances than 100 miles, the same principle would distinguish between a distance which, though more than 100 miles, is readily drivable vs. a cross-country trip, which is not.

include that the full sentence from *Ravenwoods*, which referred to "these circumstances" in the *Ravenwoods* case, which was a securities fraud case in which the plaintiff's testimony related only to the "straightforward" issue of the purchase of a stock. *Ravenwoods*, 2005 WL 236440, at *4. Of course, Mr. Kaufman is more to the instant case than an individual who merely purchased stock.

"Generally, '[w]hen a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" *Medien Patent Verwaltung AG v. Warner Bros. Entm't*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) (*quoting ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550 (S.D.N.Y.2008)). Salesforce recites numerous names of individuals and gives only a general indication of the subject matter to which they might testify. However, it fails to specify how the testimony of these individuals could be material and therefore likely to be used at trial. Statements that identify alleged material third-party witness without showing their materiality to the case should not be given any weight in the transfer analysis.

In this regard, Salesforce claims a category of allegedly "critical" witnesses, consisting of "key former Salesforce employees who were involved in the development of the accused products," some of whom it identifies by name. Salesforce claims that these witnesses have relevant information, but their alleged relevance extends solely to the issue of infringement: *i.e.*, that the former Salesforce employees have information "that will aid the trier of fact in comparing the claims in the patent with the accused product." (D.I. 28 at 13.) While the following consideration may not be immediately intuitive to the Court, fact witnesses as to *development* of the accused infringing product are generally *tangential* in a patent infringement

case, at least where the issue of *willful infringement* is not in the pleadings.[5] Unlike, for example, a trade secret misappropriation case (involving obligations of confidence and use of confidential information), or a copyright infringement (involving access to the copyrighted work and copying), patent infringement is established by comparing the characteristics of the accused product or service itself, with the written patent claims. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 2062 (U.S. 2007). In such a determination, the process for developing the product or service is a subsidiary matter. While Plaintiff will certainly want to *depose* some of these individuals as to their development activities *circa* 2000-2002, it is not at all clear that any of them will be able to add anything of factual value at trial as to whether infringement took place in the statute of limitations period beginning in 2014.[6] Moreover, even as to that period, the hard proof will be documentary – in the source code for the products (which is what gives a software product *all* of its operating characteristics) or the technical documentation, not what anyone (other than an expert) has to say about that information. Salesforce significantly overstates the significance of its "development" witnesses. It is speculative at this point whether any of these individuals will ever need to travel to New York to testify and there is no argument that the Salesforce's former employees, if Salesforce chooses to call these witnesses, would be unwilling to testify in New York.

---

[5] Plaintiff has agreed to dismiss its allegation of willful infringement at this stage of the case, without prejudice.

[6] Salesforce refers to the possibility that its employees might be called upon to explain information "not accessible to individuals outside the relevant fields." (D.I. 28 at 14, n. 6). Respectfully, this would be expert, not fact testimony. If Salesforce wants to use its own employees for such explanations, that is Salesforce's choice, but it is not a reason to shift the venue of the case across the country. Similarly, Salesforce's argument that Kaufman called a Microsoft employee as its witness is off the mark, in that (i) Microsoft had already called this employee, and (ii) Microsoft was alleging at trial, as its sole asserted piece of prior art, its own product. No such contention has emerged in this case, at least as a principal ground of alleged invalidity, as it was in the Microsoft case.

A second alleged category of "important" witnesses concerns prior art, by which Salesforce would seek to establish that the claimed invention was not novel, or was obvious. For the most part, these are a documentary issue as well. Most prior art defenses rest on prior art patents and printed publications (under 35 U.S.C. § 102(b) as that provision existed at the time of the claimed invention),[7] where it only matters what is within the four corners of the prior art document, or at most what an expert witness will testify may be inherent in or obvious from such documents. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010). In a far smaller percentage of cases, by far the exception rather than the rule, a prior art defense may be based on nondocumentary facts, such as "on sale" items, "public use," and "prior invention." Salesforce's motion does not particularly identify any such non-documentary matter as prior art. Furthermore, there is also no reason to believe that such non-documentary prior art, if ever invoked in this case, will be confined to the Northern District of California, as that district is not the only place in the U.S. where technology has been developed.

Since serving its transfer motion, Salesforce has served its invalidity contentions. The cited patent and publication prior art is voluminous and from all over the world, and in any case is of a documentary nature, as noted. The non-documentary prior art that Salesforce lists in its contentions includes software developed in France (4th Dimension), Guernsey, Channel Islands (OGRE 3D), Redmond, Washington (Microsoft Access), Scottsdale, Arizona (ACT/DB), Connecticut (SenseLab – Yale University), Wright-Patterson AFB, Ohio (Saber Wargame), and Bratislava, Slovakia (phpMyAdmin). Salesforce's focus on potential witnesses in this regard

---

[7] The patent statutory scheme as to prior art changed in 2011 (with various effective dates), under the America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011). The patents in this case are under the pre-AIA versions of the patent statutes.

from the Northern District of California is highly selective, and their significance for trial speculative.

Salesforce also identifies employees in the San Francisco area as knowledgeable about sales and marketing. (D.I. 28 at 15.) Again, why would any of those people (even if there are none of them in Salesforce's substantial offices in New York) testify at trial? It is far more likely that the individuals with damages-related information will talk to experts, and that the experts will testify at trial, as ordinarily happens in patent cases with regard to damages.

In sum, most of the time at a patent infringement trial will be devoted to the inventors and the two sides' experts. Other than that, each side will likely have a very small number of fact witnesses at trial, from their respective locations. Plaintiff will have himself, from New York, and his co-inventor, from Virginia. Plaintiff does not control Salesforce's defense, but experience strongly suggests that Salesforce, as the defendant, will likely have one or two current employees as representatives and limited fact witnesses. Whether there would even be any third-party fact witnesses at trial, and where they would come from, is speculative. This factor is essentially neutral.

### 2. *Convenience of the parties*

Salesforce is from the Northern District of California, which is convenient for Salesforce and inconvenient for Kaufman. Kaufman is from Manhattan, and the Southern District of New York is convenient for Mr. Kaufman. Manhattan is also apparently convenient for Salesforce, enough so that Salesforce chooses to maintain a large business presence in this district. Salesforce claims, however, that its "brains … are mainly in San Francisco." D.I. 28 at 16, n.7.

Because Salesforce's conduct has manifested at least some convenience with being in the plaintiff's locale, this factor tips in favor of Plaintiff.[8]

### 3.   Location of relevant documents and access to sources of proof

Each side has relevant documents at their respective locations. Salesforce cites the 1998 *Amersham* case on this point. However, times have changed in litigation since 1998. All of the production these days will be electronic.

Plaintiff has an extensive invention record that Salesforce will no doubt want to review as it seeks to develop its case. These documents are completely electronic. Salesforce has operating and sales-related documents, which are undoubtedly also electronic.[9]

Salesforce tries to make a particular argument based on its source code. These are indeed key documents. Salesforce admits, however, that these documents are not even in Northern California – they are in Phoenix, Arizona! Second, Salesforce asserts that:

> The extreme sensitivity of this code requires in-person review at Salesforce's headquarters in San Francisco or the offices of its outside counsel in the San Francisco Bay Area (where proper security protocols will be available), particularly in light of the fact that any support needed during the course of

---

[8] Further, even if this Court were to ignore Salesforce's large presence in this District as an indication that the District should be convenient for Salesforce, the District is clearly more convenient for Kaufman, an individual and a resident of the District, and a court "will not simply transfer the inconvenience from one party to the other." *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-CV-7638 (CM), 2018 WL 898230, at *2 (S.D.N.Y. Feb. 5, 2018).

[9] Salesforce states that its electronic and email records are with Google, whose "headquarters" are in Northern California. (D.I. 28 at 20.) Respectfully, this assertion is beside the point, in that it does not address where the *records* are, highlighting the limited value of trying to base a venue transfer argument on the "location" of electronic documents. It only stands to reason that Salesforce (and Google), two of the largest cloud computing companies in the world, should be able to easily handle the transfer of digital data. Courts have noted the neutral nature of digital data in the modern world. See, e.g., *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 217 (S.D.N.Y. 2017) (recognizing electronic discovery in neutralizing the location of documents as a factor in a transfer motion); *Guardian v. Life Ins. Co. of Am. v. Hernandez*, No. 11-CV-2114 (SAS), 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) (recognizing that modern technology has made the transportation of documents relatively easy).

> inspection would also need to be provided by Salesforce employees based in
> San Francisco.

(D.I. 28 at 19-20.) The argument that a defendant must transport its documents to a particular

district, that they can then only be examined in that district, and that such out-of-court

procedures materially impact the convenience of the location of the court proceedings for the

respective parties, is unique, to say the least.

The location of source code review concerns where Plaintiff's experts must go to review

Salesforce's source code – a distinctly pre-trial exercise. The location and arrangements for that

review may well be the subject of its own motion in this case, but such questions have no bearing

on the convenience of the venue for court proceedings, for either party.[10]

Furthermore, according to Salesforce, source code must first be transported to Northern

California, but then, any inspection must be limited to Salesforce's own offices there, "or the

offices of its outside counsel in the San Francisco Bay Area." Why is Salesforce's outside

counsel, Quinn Emanuel (or any other law firm for Salesforce), able to implement "proper

security protocols" in a San Francisco office but not elsewhere? Salesforce also mentions alleged

necessary "support." What "support" is needed during the examination? The parties are in fact

negotiating the protective order in this regard, and suffice it to say that Salesforce's drafts have

not offered any such "support" (whatever that might be). The alleged rationale that the source

---

[10] Plaintiff submits that, particularly during this period of COVID-19, reasonable
accommodations are called for in discovery (such as source code inspection) that would
otherwise require lengthy travel – as to which the parties, though they continue to meet and
confer, have not yet come to agreement on. *See, e.g.*, April 20, 2020 Standing Order Regarding
Pretrial Procedures in Civil Cases Assigned to Chief District Judge Rodney Gilstrap During The
Present COVID-19 Pandemic ("The Court finds that in-person source code review is unduly
hazardous, and in some cases impossible, during the COVID-19 crisis.") (available at
http://www.txed.uscourts.gov/sites/default/files/judgeFiles/COVID19%20Standing%20Order.pdf
)

code in Phoenix can only be inspected in San Francisco and that this impacts the convenience of the court venue for either party is nothing more than a pretext to help support Salesforce's transfer motion. Salesforce provides no reason why it must limit inspection only to its counsel's San Francisco office, nor does it provide any explanation why the location of such inspection is material to the choice of venue.

In sum, despite Salesforce's arguments as to its source code, this factor is flat neutral.

### 4. The locus of the operative facts

The most "operative" facts in any litigation are those material to each side's proof at trial.

As to infringement, the operative facts for Plaintiff are (i) ownership of the asserted patents (probably stipulated by the time of trial), (ii) what the asserted claims of the asserted patents say, which is documentary, perhaps supported by expert testimony,[11] and (iii) whether Salesforce's accused products and services infringed the claims over the period August 2014 (the beginning of the limitations period) to present, and perhaps through patent expiration – a function of what the products and services were, as reflected primarily by the source code for the products, again, documentary, supported by expert testimony.[12]

Salesforce may well seek to defend based on alleged non-infringement and alleged invalidity. Both issues are likely to be driven by experts. Salesforce will no doubt have a representative or two to "show a face" at trial, but non-infringement positions will likely lie primarily in an expert witness's characterizations of what Salesforce's code actually does.[13] As

---

[11] According to the ordered schedule herein (D.I. 26), this will be ruled on by the Court, long in advance of trial, at a *Markman* hearing. It would be highly unusual to have third-party fact witnesses at a Markman hearing.

[12] It would also be highly unusual for source code itself, as opposed to expert analysis thereof, to be presented to the jury.

[13] Salesforce protests that "Plaintiff is not permitted to determine how Salesforce puts

13

for validity, the proof is usually based on prior art patents and printed publications. The testimony about these documents will be in the nature of expert opinion[14] Whether Salesforce uses its outside experts for such opinions or its own (duly qualified) personnel is a matter of how Salesforce wishes to present its case, but its selection of its own employees (or former employees) for such tasks does not make them significant third-party fact witnesses. Like all evidence, invalidity references have to be authenticated, but it is unclear which reference or references will even be the focus of trial, and who would be necessary to testify regarding authentication, if authenticity was not stipulated.

The invention was made in this District. Salesforce may rely on some of the development facts in relation to various invalidity arguments.

Similarly, the accused products and services are claimed to have been developed primarily in Northern California. However, as already noted, apart from willfulness, which is not currently alleged in this case, development of the infringing product is simply not an "operative fact." The operative fact is whether the *result* of that development infringes (*i.e.*, how the product functions) not *how* it was developed.

Of course, one operative fact is *where* the infringement takes place. The alleged direct infringement by Salesforce is based on its operating the servers that provide the Salesforce CRM

---

on its defense or the evidence Salesforce chooses to present at trial." D.I. 28 at 4, n.6. Every litigator knows that what is going to happen at trial may well be completely unexpected and surprising at the end of the day. But in making a forward-looking decision such as this, the Court should be realistic, in view of what most often occurs in other patent cases, for which there is much common experience, in weighing issues of mutual convenience. The court need not give the same weight to every conceivable, though atypical, possibility for developments in this case, as may be floated by Salesforce.

[14] There could be alleged non-documentary prior art as well, but as explained above, it is not clear, to the extent prior art of that nature should become a factor at trial, where it will come from.

services. However, Salesforce has avoided making any statement as to where those servers are located; it has not asserted that this is in or in any way limited to the Northern District of California. (Furthermore, its customers who use the alleged infringing systems are located everywhere.)

Again, this factor (locus of operative facts) is neutral.

5. *The availability of process to compel the attendance of unwilling witnesses*

Plaintiff does not believe he will need any unwilling witnesses at trial, other than perhaps those that are already present to testify for Salesforce.

Salesforce speaks of prior art witnesses it will be unable to subpoena for trial. As noted above, it would be unusual for such witnesses to have any significant role in a trial, where most if not all of the evidence on validity will likely be documentary evidence supplemented by expert analysis. Secondly, there is no reason to believe that any such witnesses, if they should emerge as important, will necessarily be from Northern California. Prior art systems that are alleged to have been in public use or on sale from anywhere in the U.S. qualify under the applicable versions of 35 U.S.C. §§ 102 (addressing issues of patentable novelty) and 103 (addressing obviousness). Contending that any such non-documentary art (of which there could well be none) will necessarily be from the Northern California area is speculative (if not parochial). The parties are also free to take depositions for use at trial.

There is no sound basis to say that this factor tips in either direction.

6. *The relative means of the parties*

Plaintiff is an individual. Kaufman Decl. ¶ 9. Salesforce is a multinational, public company with a market capitalization of approximately $200 billion. It is evident, in fact, that

Salesforce has the greater means. This factor definitely tips in favor of Kaufman, and it is a factor that should be considered.

### 7. The weight to be accorded to plaintiff's choice of forum

In the Second Circuit, the plaintiff's choice of forum ordinarily gets great weight.

"[T]he plaintiff's choice of forum [should not be] disturbed[ ] unless the balance in the defendant's favor is shown by clear and convincing evidence," *New York Marine*, 599 F.3d at 114. "Before disturbing the plaintiff's choice of forum, there must be a clear showing that transfer is in the best interests of the litigation." *Telebrands Corp. v. Wilton Indus., Inc.*, 983 F. Supp. 471, 477 (S.D.N.Y. 1997); *see also Columbia Pictures Indus. v. Fung*, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006) ("Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside."). Because the discretion under Section 1404 "must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to [this]factor, plaintiff's choice of forum." *Atl. Recording v. Project Playlist*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009).

Salesforce seeks to minimize this principle. It relies on the *Amersham* case without citing the rule it set forth that "the plaintiff's choice of forum should rarely be disturbed," or the distinguishing fact that neither party in that case resided in the district.

Salesforce also extensively relies on *Emblaze Ltd. v. Apple*, Inc., No. 10 CIV. 5713 PKC, 2011 WL 724275, at *3 (S.D.N.Y. Feb. 25, 2011), in favor of transfer of a patent infringement case against Apple. This reliance is misplaced.

First, Salesforce once again fails to mention the high burden acknowledged by the court in the *Emblaze* decision itself, with regard to a plaintiff's choice of forum:

> The plaintiff's choice of forum should not be disturbed unless the balance of
> the factors tips *heavily* in favor of a transfer.

*Id.* at *1 (emphasis added). Salesforce systematically ignores this aspect of the law.

Second, and a huge difference, is the fact that the plaintiff in the Emblaze case was not

from New York, but from a foreign country:

> Emblaze's choice of forum is afforded less weight because it is *headquartered
> in Israel* and thus a change of venue would not deprive it of the opportunity to
> be heard in its home forum. Moreover, a plaintiff's choice of forum is given
> deference because it is presumed to be convenient but it is generally less likely
> that the choice was made for convenience when, as here, *a foreign plaintiff*
> chooses a forum in the United States. "In such circumstances, a plausible
> likelihood exists that the selection was made for *forum shopping* reasons ....
> Even if the U.S. district was not chosen for such forum-shopping reasons, there
> is *nonetheless little reason to assume that it is convenient for a foreign
> plaintiff*." Iragorri v. United Tech. Co., 274 F.3d 65, 71 (2d. Cir.2001) (forum
> non conveniens analysis).

*Id.* at *2 (emphasis added). None of the above rationales apply where the plaintiff resides in the

putative transferor district.

The cases relied on by Salesforce regarding plaintiff's choice of forum on pages 23-24 of

Salesforce's brief are all distinguishable and do not stand for the broad propositions that

Salesforce argues. In *Int'l Sec. Exch., LLC v. Chicago Bd. Options Exch. Inc.*, the principal

validity challenge was based on prior use by three Chicago-based exchanges (the transferee

forum), there was no disparity in means between plaintiff and defendant, and there was a

declaratory judgment action pending in the transferee forum. No. 06CIV.13445(RMB)(THK),

2007 WL 1541087, at *5-7 (S.D.N.Y. May 24, 2007), *aff'd*, No. 06 CIV.13445 RMB THK, 2007

WL 2319128 (S.D.N.Y. Aug. 9, 2007). In *Lencco Racing Co. v. Arctco, Inc.*, a factor, not present

here, was that two defendants raised "significant jurisdictional and venue objections" that

appeared to have "some merit" such that in the transferee forum, "three actions will be able to

proceed together," which might not have been possible in this transferor forum. 953 F. Supp. 69,

73 (W.D.N.Y. 1997). *Levinson v. Regal Ware, Inc.* is a case in the District of New Jersey, and therefore not under this Circuit's law. 14 U.S.P.Q.2d 1064, 1989 WL 205724 (D.N.J.1989). *Transatlantic Reinsurance Co. v. Cont'l Ins. Co.* was a declaratory action regarding insurance with a pending case in California, and a factor was that it involved California law, because "the most significant aspects of the formation of the reinsurance contracts took place in California." No. 03 CIV. 3227 (CBM), 2003 WL 22743829, at *6 (S.D.N.Y. Nov. 20, 2003) (insurance policies were issued to a California corporation with its principal place of business in California, reinsurance certificates issued to defendant by plaintiff's office in California via brokers located in California, and were delivered to defendant in California).

This weighs very strongly in favor of Plaintiff.

## CONCLUSION

Salesforce has tried to distort the applicable standard, and to throw off the analysis with a number of irrelevant and contrived arguments.

In any case, it is apparent that some of the pertinent transfer factors tip strongly in the direction of Plaintiff. Others are neutral. Counsel can argue, once the proper standard as to relevant aspects are sorted out, about whether the remaining few factors are totally neutral or tip slightly in one direction or the other. However, the Court can be confident that the full picture, on any reasonable analysis, shows a situation that falls far short of the "clear and convincing" or even a "strong" showing of a balance of factors tipping "heavily" in favor of the defendant. Based on the foregoing, Salesforce's motion for transfer should be denied.

Dated: November 25, 2020

/s Ronald Abramson
Ronald Abramson
David G. Liston
Ari J. Jaffess
Alex G. Patchen
M. Michael Lewis
**LISTON ABRAMSON LLP**
*Attorneys for Plaintiff*
The Chrysler Building
405 Lexington Avenue, 46th Floor
New York, NY 10174
(212) 257-1630
docket@listonabramson.com