UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL PHILIP KAUFMAN,

                        **Plaintiff,**

           -against-

SALESFORCE.COM, INC.,

                       **Defendant.**

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 4/29/2021

**20-CV-06879 (JPC)(SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff Michael Philip Kaufman ("Kaufman") has sued Defendant salesforce.com, inc. ("Salesforce"), asserting that a number of Salesforce's Customer Relationship Management ("CRM") services infringe on two of Kaufman's patents. Salesforce has moved to transfer the venue of this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a), where it is based. ECF No. 27. Defendant's motion is GRANTED.

## BACKGROUND

Kaufman is the first-named inventor of U.S. Patent No. 7,885,981 (the "'981 patent"), and U.S. Patent No. 10,025,801 (the "'801 patent"). ECF No. 1 at ¶ 9; ECF No. 37 ("Kaufman Decl.") at ¶ 2; see ECF No. 1, Exs. 1–2. Micah Philip Silverman is Kaufman's co-inventor on both patents, but Kaufman has been assigned sole control of assertion of the patents. Kaufman Decl. at ¶ 2.

Kaufman, an individual, resides and works in New York and has done so for many years—including at the time both patents were invented. See Kaufman Decl. at ¶¶ 3–4.

Kaufman's '981 patent, "System and Method for Generating Automatic User Interface for Arbitrarily Complex or Large Databases," was issued on February 8, 2011, with the inventors located in New York (Kaufman in New York City and Silverman in Huntington Station).[1] ECF No. 1, Ex. 1. Kaufman's '801 patent, "Systems and Methods for Automatically Generating User Interface Elements for Complex Databases," was issued on July 17, 2018. ECF No. 1, Ex. 2.

Simply put, both the '981 and '801 patents concern processes that generate user interfaces for large relational computer databases. Plaintiff contends several of Salesforce's CRM products—namely Sales Cloud, Service Cloud, and Marketing Cloud—function in a manner that infringe on multiple claims of both the '981 and '801 patents. See generally ECF No. 1.

Defendant Salesforce is incorporated in Delaware and headquartered in San Francisco, California. ECF No. 29 ("Jenkins Decl.") at ¶ 3. Over 9,000 of Salesforce's employees work either at the headquarters or in other offices in the Northern District of California, although Salesforce has many offices across the United States and the world. See id. at ¶¶ 4, 5, 15, 16, 29. Its products—including the accused products—are sold nationwide. Id. at ¶ 9.

On August 25, 2020, Kaufman filed this action against Salesforce in the Southern District of New York. ECF No. 1. Salesforce has not answered the complaint. Instead, it has filed a motion to dismiss and to strike, a motion to stay pending *inter partes* review, and a motion to transfer to the Northern District of California. This opinion addresses the motion to transfer.[2]

---

[1] This patent was the subject of a prior lawsuit in this district. See Kaufman v. Microsoft Corp., No. 16-cv-02880 (AKH) (filed Apr. 18, 2016).
[2] On January 12, 2021, Judge Cronan referred this matter to me for general pretrial supervision. ECF No. 51.

**DISCUSSION**

## I. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In a motion to transfer pursuant to § 1404(a) in a patent case, the "regional circuit law" applies. Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003); accord Smart Skins LLC v. Microsoft Corp., No. 14-cv-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (quoting In re Link_A_Media Devices Corp., 662 F.3d 1221, 1222–23 (Fed. Cir. 2011)).

As provided in the statutory language, a court conducts a two-part analysis of a motion to transfer venue. See, e.g., Freeplay Music, LLC v. Gibson Brands, Inc., 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016) ("In considering a motion to transfer venue, the inquiry is twofold." (citing Smart Skins LLC, 2015 WL 1499843, at *4)); Dickerson v. Novartis Corp., 315 F.R.D. 18, 26 (S.D.N.Y. 2016). First, a court must consider whether the action could have been brought in the district the movant proposes. See Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (quoting Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998)); AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) ("The threshold question in deciding transfer of venue . . . is whether the action could have been brought in the transferee forum." (alteration in original) (quoting Millennium, L.P. v. Hyland Software, Inc., No. 03-cv-03900 (DC), 2003 WL 22928644, at *2 (S.D.N.Y. Dec. 10, 2003))). "A case might have been brought in the proposed transferee forum if 'at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper' in that district." Smart Skins LLC, 2015 WL 1499843, at *4 (quoting Giuliani, S.p.A. v. Vickers, Inc., 997

F. Supp. 501, 502 (S.D.N.Y. 1998)). Second, a court considers the "convenience of the parties and witnesses" and the "interest of justice" to determine whether transfer is appropriate. 28 U.S.C. § 1404(a); see Smart Skins LLC, 2015 WL 1499843, at *4 (quoting Berman, 30 F. Supp. 2d at 656).

As a part of its inquiry under part two of the § 1404(a) analysis, courts in this Circuit evaluate several factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006); accord Mirror Worlds Techs., LLC v. Facebook, Inc., No. 17-cv-03473 (JGK), 2017 WL 5634127, at *2 (S.D.N.Y. Nov. 20, 2017). Courts frequently weigh two additional factors: (8) "the forum's familiarity with the governing law," and (9) "trial efficiency and the interest of justice, based on the totality of the circumstances." See Knowles-Carter v. Feyonce, Inc., No. 16-cv-02532 (AJN), 2017 WL 11567528, at *9 (S.D.N.Y. Sept. 23, 2017) (quoting Children's Network, LLC v. PixFusion LLC, 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010)); TouchTunes Music Corp. v. Rowe Int'l Corp., 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009) (quoting Glass v. S & M NuTec, LLC, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006)).[3] The list is not exhaustive. See Amersham Pharmacia Biotech,

---

[3] A significant number of cases in this district apply the nine factors to a change of venue analysis under 28 U.S.C. § 1404(a), both in patent and non-patent cases. See, e.g., Cadilla v. MFX Sols., Inc., No. 20-cv-05966 (AKH), 2021 WL 1268339 (S.D.N.Y. Apr. 6, 2021) (citations omitted); Starr Indem. & Liab. Co. v. Brightstar Corp., 324 F. Supp. 3d 421, 431 (S.D.N.Y. 2018) (quoting Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011)); Freeplay Music, LLC, 195 F. Supp. 3d at 616 (quoting Frame v. Whole Foods Mkt., Inc., No. 06-cv-07058 (DAB), 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24,

Inc., 11 F. Supp. 2d at 730 (noting that "other factors may be considered" (quoting Malone v. Commonwealth Edison Co., 2 F. Supp. 2d 545, 547 (S.D.N.Y. 1998))).

There is no "rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citing S & S Mach. Corp. v. Gen. Motors Corp., No. 93-cv-03237 (CSH), 1994 WL 529867, at *7 (S.D.N.Y. Sept. 28, 1994)); see also Smart Skins LLC, 2015 WL 1499843, at *4 (noting that "the relative weight of each factor depends on the particular circumstances of the case" (citing EasyWeb Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012))). Instead, it is left to the court's discretion to weigh the balance of factors and consider "notions of convenience and fairness" on a "case-by-case basis." See Sentegra, LLC v. ASUS Comput. Int'l, No. 15-cv-03768 (GHW), 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016) (quoting D.H. Blair & Co., 462 F.3d at 106); accord In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

"[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" N.Y. Marine & Gen. Ins. Co., 599 F.3d at 114 (quoting Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989)). The moving party must make a "clear and convincing showing that the balance of convenience favors" disturbing the plaintiff's choice. Frame, 2007 WL 2815613, at *4 (quoting Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998)); see also N.Y. Marine & Gen. Ins. Co., 599 F.3d at 114 (noting that district courts in this Circuit "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion"); Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 229 (S.D.N.Y. 2013) ("The moving

---

2007)); Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998).

party bears the burden of showing, by clear and convincing evidence, that a transfer is appropriate."); <u>Columbia Pictures Indus., Inc. v. Fung</u>, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006) ("Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside." (quoting <u>Gen. State Auth. (of Pa.) for Benefit of Crompton-Richmond Co., Inc. v. Aetna Cas. & Sur. Co.</u>, 314 F. Supp. 422, 423 (S.D.N.Y. 1970))).

## II. Analysis

### A. The litigation could have been brought in the Northern District of California.

Neither party disputes that the Plaintiff could have brought this action in the Northern District of California. <u>See</u> ECF No. 28 at 8[4]; ECF No. 36 at 1 n.1. Because this case arises under federal patent law, the Northern District of California, like this Court, would have subject-matter jurisdiction. 28 U.S.C. § 1338; <u>Smart Skins, LLC</u>, 2015 WL 1499843, at *5. Under § 1400(b) of Title 28 of the United States Code, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." <u>See</u> <u>Rosco, Inc. v. Safety Vision LLC</u>, No. 19-cv-08933 (JMF), 2020 WL 5603794, at *1 (S.D.N.Y. Sept. 18, 2020); <u>see also</u> <u>TC Heartland LLC v. Kraft Foods Grp. Brands LLC</u>, 137 S. Ct. 1514, 1516 (2017). Given that Salesforce is headquartered in San Francisco and has multiple other offices in San Francisco and Northern California, it is subject to personal jurisdiction in the Northern District of California. Jenkins Decl. at ¶¶ 3–4.

This satisfies the first part of the venue transfer analysis.

---

[4] The page numbers refer to the page numbers of the motion, listed at the bottom of each page of the PDF.

### B. Considerations of convenience and the interest of justice favor transfer.

Because this action could have been filed in the Northern District of California, Defendant's proposed transferee district, the Court can proceed to the second part of the analysis, weighing the nine factors. See Freeplay Music, LLC, 195 F. Supp. 3d at 617.

#### 1. The Plaintiff's Choice of Forum

"A plaintiff's choice of forum generally is entitled considerable weight—particularly when the plaintiff is a resident of the forum district." Fuji Photo Film Co., 415 F. Supp. 2d at 376 (citing Orb Factory, Ltd., 6 F. Supp. 2d at 210). Yet the deference given to a plaintiff's choice of forum is not absolute: the weight given to this factor is lessened "when the operative facts have few meaningful connections to the plaintiff's chosen forum." Ayala-Branch v. Tad Telecom, Inc., 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002); see Fuji Photo Film Co., 415 F. Supp. 2d at 376 (noting that a plaintiff's choice of forum may be disturbed when "the balance of several factors is strongly in favor of [the] defendant").

Kaufman is a resident of this district, and given that the patents-in-suit were invented in New York, there exists an "obvious connection to this district." Cf. NetSoc, LLC v. LinkedIn Corp., No. 18-cv-12215, 18-cv-12267 (RA), 2020 WL 209864, at *5 (S.D.N.Y. Jan. 14, 2020) (affording little weight to Plaintiff's choice of forum due to there being no "obvious connection to this district"). As discussed further below, the events that gave rise to Plaintiff's infringement claim—the development and production of the accused products—took place in the proposed transferee district. See infra Section II.B.5. But this is not a case in which there are only "minimal" connections to New York. See, e.g., Samson Lift Techs. v. Jerr-Dan Corp., No. 09-cv-02493 (RJH), 2009 WL 2432675, at *2 (S.D.N.Y. Aug. 7, 2009) (determining that this factor weighed "slightly against transfer" given that the main facts occurred in the proposed transferee

district but "sales and marketing of competing products" took place in New York). Plaintiff is "a resident of the forum district" and there is a "material connection between the underlying facts of the plaintiff's claim and the forum district." Mirror Worlds Techs., LLC, 2017 WL 5634127, at *3 (citing Goggins v. All. Cap. Mgmt., L.P., 279 F. Supp. 2d 228, 232 (S.D.N.Y. 2003)). This factor, therefore, weighs against transfer.

### 2. The Convenience of the Witnesses

The convenience of the witnesses is a critical component in the transfer analysis. See id. at *4 ("The convenience of the witnesses is ordinarily the most important factor in § 1404(a) analysis." (citing Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009))); Rosen v. Ritz-Carlton Hotel Co., No. 14-cv-01385 (RJS), 2015 WL 64736, at *3 (S.D.N.Y. Jan. 5, 2015) ("Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." (quoting Whitehaus Collection v. Barclay Prods., Ltd., No. 11-cv-00217 (LBS), 2011 WL 4036097, at *4 (S.D.N.Y. Aug. 29, 2011))).

In order to demonstrate that this factor falls in favor of transfer, the party "must 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" Freeplay Music, LLC, 195 F. Supp. 3d at 617 (quoting AEC One Stop Grp., Inc., 326 F. Supp. 2d at 529). Evaluation of this factor involves consideration of "materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Id. (internal quotation marks omitted) (quoting AEC One Stop Grp., Inc., 326 F. Supp. 2d at 529). In a patent infringement case, "a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions." Int'l Sec. Exch., LLC v. Chi. Bd. Options Exch. Inc., No. 06-cv-13445 (RMB) (THK), 2007 WL 1541087, at *3 (S.D.N.Y. May

24, 2007); accord Freeplay Music, LLC, 195 F. Supp. 3d at 617 ("Typically in a copyright infringement action, the key witnesses are those individuals who were involved in the design, production, and sale of the allegedly infringing product. (citing AEC One Stop Grp., Inc., 326 F. Supp. 2d at 529)).

Salesforce argues transfer to the Northern District of California is warranted, in large part, because that district "will be more convenient for both key non-party and party witnesses." ECF No. 28 at 12. The first group of key witnesses Salesforce identifies is "former Salesforce employees who were involved in the development of the accused products." Id. at 13. These individuals—Larry Robinson, William Moxley, Michael Ramsey, and Pratima Arora—all live in the San Francisco Bay Area. Id.; see Jenkins Decl. at ¶ 19 (noting Larry Robinson, ECF No. 30, Ex. 1, William Moxley, id., Ex. 2, Michael Ramsey, id., Ex. 3, and Pratima Arora, id., Ex. 6, worked at the Salesforce headquarters and developed the "architecture and design" of Sales Cloud and Service Cloud). Salesforce asserts its former employees would provide information such as "the architecture and functional design of the accused products." ECF No. 28 at 13. The second group of witnesses are "key prior art witnesses who live in or near the San Francisco Bay Area" who would contribute to Salesforce's invalidity defense. Id. at 14. Salesforce identifies Robert N. Goldberg, ECF No. 30, Exs. 7, 23; Andreas W. Wendker, id., Exs. 8, 16; Chris Stauber and Thomas Rothwein, id., Exs. 9, 17, 18; and Richard Williamson, Linus Upson, Jack Greenfield, and Daniel Willhite, id., Exs. 10, 19–22, as prior art witnesses, the majority of whom live in the Northern District of California.[5] See ECF No. 28 at 4–5. Salesforce also identifies

---

[5] Contrary to Salesforce's assertion, it appears that Jack Greenfield is not in the San Francisco Bay area; based on his LinkedIn page, he is based in the Los Angeles Metropolitan Area. ECF No. 30, Ex. 21.

another five individuals as "potential prior art witnesses," all of whom live within the Northern District of California.[6] See id. at 5–6; ECF No. 30, Exs. 24–28.

Salesforce also identified 11 employees at the San Francisco office who have particular knowledge of the accused products, and four employees located across the West Coast (but not in San Francisco) who could provide similar information. Jenkins Decl. at ¶¶ 17–18. Hubert Ban and Natala Menezes are other Salesforce employees who would testify as to the company's financial records and marketing efforts relating to the accused products. Id. at ¶ 26. Because all of these witnesses are primarily based in the San Francisco Bay Area, or on the West Coast, Salesforce asserts the non-party witnesses will be inconvenienced if they are required to travel cross-country to this District. ECF No. 28 at 14.

On the other side, Kaufman suggests his co-inventor, Micah Silverman, would testify at trial, and that he is in Virginia Beach, Virginia. Kaufman Decl. at ¶ 7. While California is certainly farther away from Virginia than New York, testifying at this trial would require Silverman to travel regardless.

Considering both Salesforce's and Kaufman's witnesses, the convenience of the witnesses factor weighs significantly in favor of transfer. Though the sheer number of witnesses in the Northern District of California is a component in the Court's analysis, the nature and quality of each of those witnesses plays a role as well. See G. Angel Ltd. v. Camper & Nicholsons USA, Inc., No. 06-cv-03495 (PKL), 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008). Witnesses who can testify as to the development and production of the accused products, as well as those who can testify to prior art, are almost entirely in the Northern District of

---

[6] These individuals are identified as Robert McKinney, ECF No. 30, Exs. 11, 24; Mandayam Anandamphillai Sridhar, id., Exs. 12, 25; Michel Prompt, id., Exs. 13, 26; Narayanan Vijaykumar, id., Exs. 14, 27; and Derek Henniger, id., Exs. 15, 28.

California; all of the witnesses Salesforce identified would be inconvenienced if they were required to travel to the Southern District of New York. Conversely, only Kaufman and, possibly, Silverman, would be required to travel to the Northern District of California. The convenience of party witnesses, therefore, would be greater in the transferee district. See Jenkins Decl. at ¶ 18 (explaining that West Coast-based Salesforce employees would "find traveling to the Northern District of California more convenient than traveling" to this District).

Special consideration must also be given to non-party witnesses. See ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) (describing the "convenience of non-party witnesses" as "the crucial issue"). The individuals not employed by Salesforce are principally based in the Northern District of California. See, e.g., Jenkins Decl. at ¶ 19; ECF No. 30, Ex. 2 (indicating that William Moxley, a non-party witness who was involved with the development of the accused products, lives in the "San Francisco Bay Area"). Accordingly, their convenience as non-party witnesses "is weighted more heavily than that of party witnesses," Rosen, 2015 WL 64736, at *3, and weighs strongly in favor of transfer as they would be less inconvenienced if the case was transferred to the Northern District of California.

Kaufman attempts to minimize the importance of Salesforce's witnesses by arguing that prior art witnesses will not needed at trial; Salesforce, on the other hand, refers to Emblaze Ltd. v. Apple Inc., No. 10-cv-05713 (PKC), 2011 WL 724275, at *3 (S.D.N.Y. Feb. 25, 2011), to demonstrate that prior art witnesses have been considered when evaluating the convenience of witnesses factor. See ECF No. 28 at 14–15. Indeed, it is premature at this juncture to assume these witnesses will not be needed at trial. Moreover, the Court agrees that the testimony of both current and former Salesforce employees is relevant to this case because those individuals are best equipped to speak to the development and production of the allegedly infringing products.

See NetSoc, LLC, 2020 WL 209864, at *3 (citing Int'l Sec. Exch., LLC, 2007 WL 1541087, at *3). Kaufman also attempts to argue that witnesses *generally* will not be as important to the case because "the hard proof will be documentary." ECF No. 36 at 8. But that argument fails to consider that the documentary evidence Kaufman emphasizes would need to be admitted and evaluated through witnesses, who are principally located in the San Francisco Bay Area. See, e.g., ECF 30, Exs. 16–24.

Therefore, this factor weighs strongly in favor of transfer.

### 3. The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

Transfer is appropriate when it would facilitate access to relevant documents. See In re Warrick, 70 F.3d 736, 741 (2d Cir. 1995). Because patent infringement cases rely heavily on evidence from the accused infringer, "the place where the defendant's documents are kept weigh in favor of transfer to that location." Millennium, L.P., 2003 WL 22928644, at *4 (citing Boreal Laser Inc. v. Coherent, Inc., No. 91-cv-05863 (MBM), 1992 WL 9375, at *2 (S.D.N.Y. Jan. 13, 1992)). This factor "should be considered to the extent that it bears on the convenience calculus." Samson Lift Techs., 2009 WL 2432675, at *3 (citation omitted); Brasseler USA Dental, L.L.C. v. Discus Dental, Inc., No. 04-cv-09404 (NRB), 2005 WL 1765706, at *4 (S.D.N.Y. July 25, 2005) ("The cost of copying and transporting these materials to New York, although by no means substantial, is a cost that can be avoided by a transfer of venue."). Of course, "[i]n an era of electronic documents, easy copying and overnight shipping," this factor is less important now. ESPN, Inc., 581 F. Supp. 2d at 548 (citations omitted).

Salesforce avers that the "technical design documents, documents discussing product plans, and documents reflecting incremental changes" to the accused systems are all located in San Francisco. Jenkins Decl. at ¶¶ 20, 23, 27. None of those documents is exclusively stored in

New York. Id. at ¶ 30. The source code is stored on servers in Phoenix, Arizona, id. at 21, and pursuant to the protective order agreed to by the parties, can be viewed only at the "offices of [Salesforce's] outside counsel," ECF No. 58 at ¶ 23.

Of course, as Plaintiff notes, "all of the production" is electronic. ECF No. 36 at 11. Thus, the distance between California and New York looms a little less large when considering this factor. See Amersham Pharmacia Biotech, 11 F. Supp. 2d at 730; see also NetSoc, LLC, 2020 WL 209864, at *5 (comparing the analysis of this factor in 1995 and 2015). Neither Salesforce nor Plaintiff will bear a greater inconvenience transmitting the relevant evidence to this Court or a court in California. See Tomita Techs. USA, LLC v. Nintendo Co., LTD., 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) ("[Defendant] almost certainly will not physically ship documents that relate to the design process from Japan to the trial court. Instead, it will scan those documents onto a computer, producing them with the click of a mouse in either New York or Washington."). Nevertheless, the Court must take into account the fact that the greater bulk of the sources of proof remain more readily accessible in the Northern District of California. See In re Apple Inc., 979 F.3d 1332, 1340 (Fed. Cir. 2020). This factor, therefore, weighs only slightly in favor of transfer.

### 4. The Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." DiPizio v. Empire State Dev. Corp., No. 15-cv-05339 (GHW), 2015 WL 5824704, at *6 (S.D.N.Y. Oct. 5, 2015) (quoting Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014)).

Salesforce would find it more convenient to litigate this matter in the Northern District of California, where it is based and where most knowledgeable employees (and former employees) are located. See Jenkins Decl. at ¶¶ 13, 15–17. Apparently, there are no Salesforce employees who have worked on the accused products who live or work in New York. Id. at ¶ 29. Rather, "key prior art witnesses" like Chet Chauhan and Blake Markham worked on Sales Cloud and Service Cloud and are still at Salesforce; Markham is apparently in Oakland, California; Chauhan was last reported to be working in the Netherlands. Jenkins Decl. at ¶ 19; ECF No. 30, Exs. 4–5. The documents relating to the accused products, moreover, are "stored or available in San Francisco, California." Id. at ¶ 20. Salesforce asserts this factor is neutral as the inconvenience will shift from one party to the other depending where the case proceeds. See ECF No. 28 at 24 (citing Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional, No. 08-cv-08106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009)). However, Salesforce does maintain a large office in New York and could access documents from its New York or San Francisco office, thereby reducing its inconvenience. Jenkins Decl. at ¶ 30.

Litigating this case in the Northern District of California would be inconvenient for Kaufman, who is based, along with his counsel, in New York. See Kaufman Decl. at ¶¶ 3–4, 9. Therefore, because transfer of this matter would serve to shift the burden from one party to the other, this factor is neutral. See Kiss My Face Corp. v. Bunting, No. 02-cv-02645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff.").

### 5.  The Locus of Operative Facts

The locus of operative facts is one of the most important factors in a court's analysis of a transfer motion. See Lighting World, Inc. v. Birchwood Lighting, Inc., No. 01-cv-04751 (BSJ),

2001 WL 1242277, at *3 (S.D.N.Y. Oct. 16, 2001); WellQuest Int'l Inc. v. Genesis

Intermedia.com, Inc., No. 00-cv-06558 (RCC), 2001 WL 1246592, at *4 (S.D.N.Y. Oct. 18,

2001) ("The location of the operative events is a 'primary factor' in a transfer motion." (quoting

ZPC 2000, Inc. v. SCA Group, Inc ., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000))); see also

Amersham Pharmacia Biotech, Inc., 11 F. Supp. 2d at 730 (observing that evaluation of the

convenience of the witnesses and the location of relevant documents and sources of proof are

"typically dependent . . . on identification of" the locus of operative facts). Therefore, "[t]he

locus of operative facts 'will substantially favor[ ] transfer from this district when a party has not

shown that any of the operative facts arose in the Southern District of New York.'" NetSoc,

LLC, 2020 WL 209864, at *4 (alteration in original) (quoting Berger v. Cushman & Wakefield

of Pa., Inc., No. 12-cv-09224 (JPO), 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013)).

 The locus of operative facts rests in the location where the "events from which the claim

arises." Ivy Soc'y Sports Grp., LLC, 2009 WL 2252116, at *6 (quoting AVEMCO Ins. Co. v.

GSF Holding Corp., No. 96-cv-08323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11,

1997)). In a patent infringement case, the operative facts "include facts relating to the design,

development, and production of a patented product." Invivo Rsch., Inc. v. Magnetic Resonance

Equip. Corp., 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000).

 Here, the "substantial majority" of the development of two out of three of the allegedly

infringing products—Salesforce's Sales Cloud and Service Cloud—took place in Salesforce's

San Francisco headquarters or at another one of Salesforce's offices in Northern California.

Jenkins Decl. at ¶¶ 12, 19. The third accused product—Marketing Cloud—was primarily

developed in Indianapolis, Indiana. Id. at ¶ 12. The Lightning App Builder Team, Lightning

Design Team, and the Lightning Web Component Team, the teams of Salesforce employees who

develop(ed) and maintain the allegedly infringing CRM services, are all primarily based in San Francisco. Id. at ¶¶ 15–16. Some individuals on those teams are also in Hyderabad, India, and North Carolina; none is in New York. Id. at ¶¶ 15–16.

Conversely, the patents-in-suit were developed and designed by Kaufman and his co-inventor, Silverman, in New York. See Kaufman Decl. at ¶ 3. The attorneys who prosecuted the patents-in-suit are also in this District, and Silverman, although not in New York, resides in Virginia. See Mirror Worlds Techs., LLC, 2017 WL 5634127, at *6.

Plaintiff notes, and Defendant acknowledges, that Salesforce sells its products everywhere. See Jenkins Decl. at ¶ 9. However, those sales "alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." Invivo Rsch., Inc., 119 F. Supp. 2d at 439–40 (citing Bionx Implants, Inc. v. Biomet, Inc., No. 99-cv-00740 (WHP), 1999 WL 342306, at *4 (S.D.N.Y. May 27, 1999); see also Pergo, Inc. v. Alloc, Inc., 262 F. Supp. 2d 122, 129–30 (S.D.N.Y. 2003) (finding that, because there was no nexus to New York, evidence of defendants' sales in New York was "insufficient").

Salesforce argues that the "locus of operative facts is the location of the design and development of the accused products," and not, as Plaintiff asserts, the location of the patents-in-suit. See ECF No. 28 at 9 n.5; ECF No. 22 at 2. Plaintiff, for his part, claims that "development of the infringing product is simply not an 'operative fact,'" and rather that the operative fact is "whether the result of that development infringes." ECF No. 36 at 14.[7]

Courts in this Circuit have often looked first to the location of the design and development of the accused product, but not to the exclusion of consideration of the location of

---

[7] Plaintiff devoted much of his argument to a discussion of the facts and testimony likely to be presented at trial, which the Court does not find persuasive. See ECF No. 36 at 13. Plaintiff also claims that the "proof" for validity is "usually based on prior art patents and printed publications." Id. at 13–14. Plaintiff provided no support for this contention, and the Court likewise finds it unpersuasive.

the development of the patent-in-suit. See Children's Network, LLC, 722 F. Supp. 2d at 413 ("In patent cases, the locus of operative facts usually lies where *either* the patent-in-suit *or* the allegedly infringing product was designed, developed and produced." (emphases added) (first citing TouchTunes Music Corp., 676 F. Supp. 2d at 175; and then citing Fuji Photo Film Co., Ltd., 415 F. Supp. 2d at 375). Thus, this Court cannot conclude that the locus of operative facts lies in the Northern District of California *solely* because the allegedly infringing products were developed and produced there, just as it cannot determine that the locus is in this District solely by virtue of its being the location of the development and production of the patents-in-suit. See EasyWeb Innovations, LLC, 888 F. Supp. 2d at 353–54 (collecting cases in which courts consider operative facts stemming from the patented product).

Nevertheless, considering that the "design and development of the allegedly infringing product[s] took place [in Northern California] and the designers and developers of the product[s] live and work in that forum," the Court concludes that the locus of operative facts is San Francisco, California. Lighting World, Inc., 2001 WL 1242277, at *3 (citations omitted); see ECF No. 30, Exs. 1–7; Emblaze Ltd., 2011 WL 724275, at *3 (finding that "on balance, this factor tilts in favor of transfer," given that the accused protocol was developed, and records of any sales and other evidence were also located in California, and the only New York connections were the locations of "content providers" and patent prosecution counsel); cf. Mirror Worlds Techs., LLC, 2017 WL 5634127 at *4, *6 (declining to grant the motion to transfer because even though the accused technology was invented outside this district, it was invented in a "nearby" district, and the inventors, attorneys who prosecuted the patents-in-suit, third-party witnesses, and other factors were in or near this district). Accordingly, this factor weighs in favor of transfer.

## 6. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Next, the Court considers the relative limitations on its power to compel the attendance of witnesses. See Fed. R. Civ. P. 45(c)(2) (a district court can subpoena witnesses within the district or 100 miles of the district).

This factor weighs significantly in favor of transfer.[8] To Salesforce's point, the prior art witnesses and Salesforce's former employees in the San Francisco Bay Area can be compelled to testify at trial by the District Court for the Northern District of California, and not by this Court. See ECF No. 28 at 20; see also Bionx Implants, Inc., 1999 WL 342306, at *5 (noting that defendant corporation's former employees had "signed declarations that indicate that they may not be able to testify were the action to be litigated in New York").

The Court acknowledges that Salesforce still has many *current* employees that it could call to testify on its behalf. See supra Section II.B.2. A company "can compel the testimony of [its] own employees without the need for subpoena," so neither this Court nor the Northern District of California would have to rely on process to secure the testimony of Salesforce employees. See Fuji Photo Film Co., Ltd., 415 F. Supp. 2d at 375 (citing Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)).

However, none of the prior art witnesses that Salesforce identified is a current Salesforce employee. See ECF No. 30, Exs. 16–28. And although Salesforce has not suggested that the non-party witnesses would refuse to testify in New York, it has identified at least 12 prior art witnesses that are almost entirely located in the Northern District of California and who could not be "compelled" as employees. See id.; accord Atl. Recording Corp., 603 F. Supp. 2d at 697; but see Freeplay Music, LLC, 195 F. Supp. 3d at 619–20 (finding this factor to be neutral

---

[8] Plaintiff, for his part, asserts this factor is neutral, and notes he likely will not have any unwilling witnesses at trial. ECF No. 36 at 15.

because defendant corporation did not indicate that its witnesses, which included former employees, would refuse to testify in New York as opposed to in their home state).

Therefore, given that the "bulk of the relevant evidence usually comes from the accused infringer" in patent infringement cases, that evidence would be more assuredly available to Salesforce only if the case proceeded in the Northern District of California, where the courts could compel the attendance of unwilling witnesses. Emblaze Ltd., 2011 WL 724275, at *3 (quoting In re Genetech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Therefore, this factor weighs strongly in favor of transfer.

### 7. The Relative Means of the Parties

If there is a disparity between the parties, as exists here, when an individual sues a large corporation, the relative means of the parties may be considered. Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 989 (E.D.N.Y. 1991); accord Monfried v. Sigma Fin. Corp., No. 15-cv-02806 (VSB), 2016 WL 9724977, at *5 (S.D.N.Y. June 14, 2016). However, a "party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (quoting NBA Props., Inc. v. Salvino, Inc., No. 99-cv-11799 (AGS), 2000 WL 323257, at *10 (S.D.N.Y. Mar. 27, 2000)).

Salesforce contends that the relative means of the parties is neutral because Kaufman "has not suggested or demonstrated that transfer would "unduly burden[]" his finances. ECF No. 28 at 24–25. For his part, Kaufman asserts that this factor tips in his favor as he is an individual going up against a multi-billion-dollar company. ECF No. 36 at 15–16. An individual arguing against transfer "must offer documentation" to show the deleterious effect transfer would show on his finances. Plaintiff has provided no support for his assertion. Am. Eagle Outfitters, Inc.,

457 F. Supp. 2d at 478. Therefore, the Court affords this factor neutral weight. See, e.g., Monfried, 2016 WL 9724977, at *5.

### 8. The Forum's Familiarity with Governing Law

Courts that consider the "forum's familiarity with governing law" note that it is a factor that is generally given little weight. See Freeplay Music, LLC, 195 F. Supp. 3d at 620 (citing AEC One Stop Grp., Inc., 326 F. Supp. 2d at 531). "Since patent law is federal law, any district court may handle a patent case with equal skill." Invivo Rsch., Inc., 119 F. Supp. 2d at 439 (quoting Recoton Corp. v. Allsop, Inc., 999 F. Supp. 574, 578 (S.D.N.Y. 1998)); see also Prudential Sec. Inc. v. Norcom Dev., Inc., No. 97-cv-06308 (DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998) ("[T]his Court has routinely held that the 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states."). Neither Defendant nor Plaintiff assert that this factor weighs in favor of or against transfer. ECF No. 28 at 25; ECF No. 38 at 2 n.2. Therefore, this factor is neutral.

### 9. Trial Efficiency and the Interests of Justice

For the final factor, "trial efficiency and interests of justice," courts have considered whether one venue's courts "would be overburdened by the litigation in their courts." AEC One Stop Grp., Inc., 326 F. Supp. 2d at 531. In other words, this factor "relates primarily to issues of judicial economy." Astor Holdings, Inc. v. Roski, No. 01-cv-01905 (GEL), 2002 WL 72936, at *13 (S.D.N.Y. Jan. 17, 2002) (quotation omitted).

Plaintiff makes no argument on this point and asserts this factor is neutral. ECF No. 36 at 2 n.2. Salesforce argues that this factor favors transfer because the case is still in its early stages and because "California has a strong public interest in overseeing this dispute" because it relates

to a business and alleged infringement that occurred there. ECF No. 28 at 21–22. The Court is not swayed by those arguments. For one, although the case is in its early stages, the parties have already engaged in a fair amount of motion practice that is pending before the Court and have sought this Court's time for the resolution of discovery disputes. See, e.g., ECF No. 73. Thus, while "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work," NetSoc, LLC, 2020 WL 209864, at *6 (citing Invivo Rsch., Inc., 119 F. Supp. 2d at 439), the case has progressed past its earliest stage. Moreover, California's interest in overseeing the dispute is no stronger than New York's interest in overseeing the dispute regarding one of its residents and patents-in-suit that were created here.

Salesforce also argues that the presence of Kaufman's other litigation against Microsoft relating to the '981 patent should not serve to propel this factor in favor of the case remaining in this district. The Court agrees in this regard, particularly given that the Microsoft matter has already been tried before a jury and would not be consolidated with this case. Cf. Amersham Pharmacia Biotech, Inc., 11 F. Supp. 2d at 730–31 (concluding this factor weighed in favor of transfer as it would allow two patent infringement cases involving the same parties to be related and overseen by the same district and magistrate judges).

Accordingly, this factor weighs slightly in favor of remaining in this district.

### C. Balancing the Factors

The convenience of the parties, the relative means of the parties, and the forum's familiarity with the law are all factors that the Court affords neutral weight. The Plaintiff's choice of forum and trial efficiency and interest of justice considerations weigh in favor of denying Salesforce's motion to transfer and leaving Kaufman's choice in venue undisturbed. However, the locus of facts and the convenience of the witnesses—two factors that merit

significant weight—as well as the inability of this Court to compel witness trial testimony and the location of relevant documents, all weigh strongly in favor of transferring this matter to the Northern District of California. See In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009) (holding that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer"). Accordingly, there is clear and convincing evidence that the balance of factors shows that transfer is appropriate and outweighs Plaintiff's interest in litigating in his chosen forum. See Orb Factory, Ltd., 6 F. Supp. 2d at 208 ("[A] court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice.'" (quoting Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995))).

## CONCLUSION

Having evaluated all the factors, and in consideration of the interests of justice, the Court concludes that transfer of this action to the Northern District of California is appropriate. The Clerk of Court shall transfer this case to the U.S. District Court for the Northern District of California. The Clerk of Court is further respectfully directed to GRANT the motion at ECF No. 27 and DENY as moot the motion at ECF No. 70.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     April 29, 2021
           New York, New York